United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

E.T.,

          Plaintiff,

     v.

LELAND DUDEK, et al.,

          Defendants.

Case No. 25-cv-02799-AMO

**ORDER RE SOCIAL SECURITY APPEAL**

Re: Dkt. No. 14

Plaintiff E.T.[1] appeals the decision of the Commissioner of Social Security which found E.T. not disabled and ineligible for disability benefits within the meaning of Title XVI and Title II of the Social Security Act, as amended.  Having reviewed the record submitted as well as the parties' briefs and the relevant legal authority, the Court **GRANTS** E.T.'s request to reverse the Commissioner's unfavorable decision, **DENIES** the Commissioner's request to affirm the denial of benefits, and **REMANDS** for further proceedings consistent with this order.

I.      **BACKGROUND**

The Court sets forth the relevant procedural history before describing the factual circumstances underlying E.T.'s appeal.

      A.      **Procedural History**

E.T. filed an application for Title XVI benefits on March 28, 2022, alleging an onset date of January 1, 2017.  Dkt. No. 11, Administrative Transcript ("AT") 59.  E.T. amended his onset date to the date of the application.  AT 269.  E.T.'s initial application was denied on December 14,

---

[1] The Court partially redacts E.T.'s name to mitigate privacy concerns.  *See Heather L. v. Saul*, No. 19-CV-02483-SI, 2020 WL 3504468, at *1 n.1 (N.D. Cal. June 29, 2020) (citing Fed. R. Civ. P. 5.2(c)(2)(B)).

United States District Court
Northern District of California

2022.  AT 73, 89.  E.T. requested reconsideration on January 11, 2023, and the Commissioner denied the reconsideration request on June 6, 2023.  AT 75, 83-84.  Thereafter, E.T. requested a hearing before an Administrative Law Judge on June 22, 2023, and a telephone hearing was held on December 19, 2023, before Judge Enrico Alis ("the ALJ").  AT 17.  The ALJ issued an unfavorable decision on March 19, 2024.[2]  AT 14-34.  E.T. filed a timely request for review by the Appeals Council on May 16, 2024, which was denied on January 27, 2025.  AT 1-6, 276.  This action follows.

### B.   Factual History

E.T. was 25 years old at the time he filed his application.  AT 58.  He currently lives in Oakland with a person he considers to be a father figure.  AT 41-44.  E.T. was born and raised in Boise, Idaho.  AT 284, 605.  His biological parents were homeless at the time of his birth, and he was raised by his foster parents from a young age.  *Id.*  His foster parents were physically, mentally, and emotionally abusive; his foster father would hit him frequently, and his foster mother was controlling.  *Id.*  Growing up, he was constantly afraid of being hit by his father.  AT 284.

At 16, E.T. moved with his family to California.  AT 284, 605.  He experienced bullying in school, and he did not finish high school after repeating the twelfth grade.  AT 284-285, 605.  After failing to finish high school, his mother tried to get him a job moving furniture, and he quit after two weeks due to the job being too physically demanding.  *Id.*  Quitting his job caused conflict with his mother, and E.T. moved out and was homeless for six years.  AT 284, 605.  While he was homeless, he was assaulted multiple times, harassed by police, and experienced many traumatic events, including seeing homeless tents intentionally burned down.  AT 284-85, 608-09.

While he was homeless, E.T. began living together with the person he considers his father figure.  AT 41-44.  Together, they were able to obtain housing.  E.T. reports he still feels stressed by the possibility of becoming homeless again.  AT 480.

---

[2] The Court discusses the ALJ's decision in greater detail below as necessary to the analysis.

## II.   LEGAL STANDARDS

### A.   Standard of Review

The Court's review of the Commissioner's final decision is "highly deferential." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023).  The Court "will disturb the denial of benefits only if the decision contains legal error or is not supported by substantial evidence." *Id.*  "Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance." *Id.*  It is relevant evidence that a reasonable person might accept as adequate to support a conclusion after considering the entire record.  *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021); *see also Biestek v. Berryhill*, 587 U.S. 97, 102 (2019); *Mar for Mar v. Saul*, 838 F. App'x 290, 291 (9th Cir. 2021) (holding that substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (citation omitted)).  This Court must review the entire record and consider adverse as well as supporting evidence.  *Ahearn*, 988 F.3d at 1115.  Where the evidence can reasonably be construed to support more than one rational interpretation, the court must uphold the ALJ's decision.  *See Ahearn*, 988 F.3d at 1115-16 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)).  This includes deferring to the ALJ's credibility determination and resolution of evidentiary conflicts.  *See Ahearn*, 988 F.3d at 1115 ("[t]he ALJ is responsible for determining credibility resolving conflicts in medical testimony, and for resolving ambiguities," and "we reverse only if the ALJ's decision was not supported by substantial evidence in the record as a whole") (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

### B.   Disability Determination

Subject to other provisions not relevant here, a claimant is "disabled" under the Social Security Act ("SSA") if two requirements are met.  *See* 42 U.S.C. § 1382c(a)(3).  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Id.* § 1382c(a)(3)(A).  Second, the impairment must be "of such severity that [the claimant] is not

3

only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 1382c(a)(3)(B).

The SSA's regulations set forth a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4). The relevant inquiry at each step is as follows:

> 1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).
>
> 2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).
>
> 3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).
>
> 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).
>
> 5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). In between the third and fourth steps, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4). After determining the claimant's RFC, the ALJ proceeds to steps four and five of the disability inquiry. *See Ferguson v. O'Malley*, 95 F.4th 1194, 1198 (9th Cir. 2024). The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). Nonetheless, at every step of the inquiry, the ALJ has an affirmative duty to assist the claimant in developing the record. *Id.* at 1098 n.3. "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Id.*

//

//

United States District Court
Northern District of California

### III.    DISCUSSION

E.T. contends that the ALJ erred at step two by failing to perform a proper de minimis test properly evaluate medical opinions, at step three by failing to provide clear and convincing reasons for rejecting E.T.'s testimony, and at step four by failing to base E.T.'s RFC on substantial evidence. The Court takes up these purported errors in the sequence presented in the regulations.

### A.    Step Two – De Minimis Test

At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has "a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of what is "not severe." According to the regulations, "an impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521(a) (2024). Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 C.F.R. § 140.1521(b); Social Security Ruling 85-28.

"Important here, at the step two inquiry, is the requirement that the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Smolen*, 80 F.3d at 1290. The ALJ is also "required to consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity." *Id.* "Finally, as the Supreme Court has recognized, the Step-Two inquiry is a 'de minimis' screening device meant to dispose of groundless claims." *Id.* (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individuals [sic] ability to work.' " *Id.*

E.T. contends that the ALJ erred in not finding fatigue to be a severe impairment. Dkt. No. 14 at 16. But the record shows that the ALJ acknowledged and considered limitations from all E.T.'s impairments, including those that were non-severe. AT 22. The ALJ weighed each of E.T.'s claimed impairments, weighing his moderate limitations, including "understanding,

United States District Court
Northern District of California

remembering or applying information"; "interacting with others"; "concentrating, persisting or maintaining pace"; and his mild limitation, "adapting or managing oneself." AT 20-22. E.T.'s argument that additional limitations were required is a plea to reweigh the evidence, which is not a reviewing court's role. *Ahearn*, 988 F.3d at 1115. Because substantial evidence supported the ALJ's decision, this Court will not disturb it.

### B.       Step Three – Assessing Severity of Impairments

#### 1.        Evaluation of Medical Opinions

It is well established in this Circuit that the ALJ "need not take every medical opinion at face value." *Cross v. O'Malley*, 89 F.4th 1211, 1213 (9th Cir. 2024). "Rather, the ALJ must scrutinize the various – often conflicting – medical opinions to determine how much weight to afford each opinion." *Id.* at 1213-14. The "most important factors" the ALJ must consider in doing so are supportability and consistency. 20 C.F.R. § 404.1520c(a); *id.* § 416.920c(a). "Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence." *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." *Id.* at 792 (citing 20 C.F.R. § 404.1520c(c)(2)). In assessing a medical opinion's persuasive value, the "ALJ need only provide an explanation supported by substantial evidence." *Kitchen*, 82 F.4th at 740. A medical opinion is properly found unpersuasive where the provider assesses limitations that are "contradicted [by] his own treatment records." *Stiffler v. O'Malley*, 102 F.4th 1102, 1107 (9th Cir. 2024); see also *Jeanette R. v. Kijakazi*, 620 F. Supp. 3d 1127, 1143 (E.D. Wash. 2022) (noting the ALJ "is not obliged to credit medical opinions that are unsupported by the medical source's own data . . ."). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a non-examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

Here, E.T. argues that the ALJ erred in evaluating the persuasiveness of medical opinions by finding one examiner minimally persuasive, by finding one examiner only somewhat

persuasive, and by finding state agency medical consultants mostly persuasive.  Dkt. No. 14 at 8-13.  The Court considers the ALJ's evaluations of the medical opinions in turn.

### a.   Dr. Katherine Wiebe

E.T. avers that the ALJ erred in finding the opinion of Katherine Wiebe, Ph.D., only minimally persuasive, highlighting three purported defects in the ALJ's assessment of Dr. Wiebe's opinion.  Dkt. No. 14 at 10-11.  First, E.T. advances, the ALJ erred in noting that Dr. Wiebe's assessment took place prior to the relevant time period – E.T.'s counsel highlighted in a brief to the ALJ that the evaluation took place on July 21, 2022, rather than the date of July 21, 2021, and the latter date simply reflected a typo.  *See* AT 270.  While the ALJ stated that the evaluation took place "outside of the relevant time period for the claimant's alleged disability," the timeliness of the evaluation appears to be a lesser basis among others on which the ALJ determined Dr. Wiebe's opinion minimally persuasive.  AT 26-27.  The ALJ specifically found, "Aside from being outside the relevant time period for the claimant's alleged disability, I find Dr. Wiebe's opinion, specifically her assessments of 'marked' limitations of function, to be unsupported by adequate explanation and inconsistent with the totality of the medical evidence . . ."  *Id.*  The date of the evaluation thus does not appear to weigh as heavily in the ALJ's assessment as E.T. advances, and it does not undermine the ALJ's assessment of Dr. Wiebe's persuasive value.  Read in context, the ALJ found significant other bases to find Dr. Wiebe's opinion minimally persuasive, as expressed throughout this passage:

> Aside from being outside the relevant time period for the claimant's alleged disability, I find Dr. Wiebe's opinion, specifically her assessments of "marked" limitations of function, to be unsupported by adequate explanation and inconsistent with the totality of the medical evidence, including the assessments of Dr. Stafford and Dr. Catlin, which generally show no more than "moderate" limitations of function overall.  Some of Dr. Wiebe's narrative impressions are also unsupported and completely inconsistent with the medical evidence overall.  For example, she opines that the claimant "exhibits a number of symptoms that are characteristic of a delusional disorder, such as transient ideas of reference, feelings of grandiosity, and irrational jealousy" and speculates that he "may be experiencing psychotic symptoms including periods of disorganized and bizarre thinking" which is "[p]ossibly a phase in a more extended schizophrenic course".  [Citation.]  However, this portion of Dr. Wiebe's assessment is not reflected, much less supported, by any other treatment or examining providers notes or assessments

anywhere else in the medical evidence or even alluded to in the claimant's own testimony.

AT 26-27. This same excerpt addresses E.T.'s second attack against the ALJ's finding of minimal persuasiveness. Though E.T. avers that the ALJ erred in rejecting Dr. Wiebe's assessment based on her note that E.T. exhibited disorganized and bizarre thinking, Dkt. No. 14 at 10, the ALJ makes clear that he rejects that portion of Dr. Wiebe's evaluation based on its dissonance with other portions of the record, including other medical evaluations and Plaintiff's own testimony, AT 26-27. The ALJ thus explained how the ALJ considered the factors of supportability and consistency in determining the persuasiveness of Dr. Wiebe's medical opinion. This is sufficient.

E.T.'s third attack on the ALJ's finding of Dr. Wiebe's opinion only minimally persuasive is that the ALJ's "erroneous[]" claim that Dr. Wiebe would not be able to make complicated psychological profiles through a telephone interview. Dkt. No. 14 at 10-11. In the relevant portion of the decision, the ALJ states in reference to Dr. Wiebe's opining related to potential psychotic symptoms, "[m]oreover, how Dr. Wiebe would be able to assess such a complicated psychological profile in a telephone interview is not readily evident and calls into question the overall validity of her assessment." AT 27. This reasoning serves as but a portion of the ALJ's broader assessment of Dr. Wiebe's opinion, particularly as it relates to her unique suggestion among medical evaluators on record that E.T. exhibited symptoms characteristic of a delusional disorder. E.T. avers that the ALJ's analysis proves internally inconsistent – that the ALJ should not discount Dr. Wiebe's telephone-based evaluation as minimally persuasive where the ALJ separately found non-examining state agency consultants persuasive despite their mere review of documentation. *See* Dkt. No. 14 at 10-11. The Court disagrees. As discussed further below, the ALJ found the state agency medical consultants' opinions supported by and consistent with other portions of the record. AT 26. The ALJ's opinion of Dr. Wiebe's outlier perspective is consistent with the ALJ's assessment of the entirety of the record, particularly where he credits "Dr. Wiebe's recognition of the claimant's diagnoses of depression and anxiety, as well as an unspecified neurocognitive disorder," as "the portion of her opinion most consistent with the totality of the medical evidence." AT 26. In sum, the ALJ's evaluation of Dr. Wiebe's medical opinion is

supported by substantial evidence.  *Kitchen*, 82 F.4th at 740.  The Court does not disturb the ALJ's decision on this basis.

### b.    Dr. Laura Catlin

E.T. avers that the ALJ erred in finding the opinion of Laura Catlin, Psy.D., only somewhat persuasive.  Dkt. No. 14 at 11-12.  E.T. particularly takes umbrage with the ALJ's statement that "even if some marked limitations were supported on the day of the exam, the totality of the medical evidence does not indicate that such marked limitations lasted for 12 months."  AT 28.  This claim, E.T. avers, is not supported by the record because Plaintiff's "marked" impairments also appear in Dr. Wiebe's opinion, which took place more than 12 months before Dr. Catlin's.  *See* Dkt. No. 14 at 11-12; *see also* AT 610-12 (relevant portion of Catlin opinion) and AT 300 (relevant portion of Wiebe opinion).

E.T.'s argument fails on two grounds.  First, the ALJ did not compare Dr. Catlin's evaluation only against Dr. Wiebe's opinion, he compared Dr. Catlin's opinion with the "totality of the medical evidence," which necessarily included his finding that Dr. Wiebe's opinion was only minimally persuasive.  AT 28.  E.T. fails to establish the ALJ improperly evaluated Dr. Catlin's medical opinion on that basis.  Second, the ALJ found Dr. Catlin's opinion somewhat persuasive because, in significant part, he found her opinion "not fully supported by her own exam findings."  AT 27-28 (citing Catlin opinion and quoting discrepancies).  On this basis, the ALJ certainly could have found Dr. Catlin's opinion even less persuasive than the "somewhat persuasive" he conferred.  *See Stiffler*, 102 F.4th at 1107.  The ALJ's decision in this regard is again supported by substantial evidence, and the Court does not disturb the ALJ's decision on this basis.

### c.    State Agency Medical Consultants

E.T. argues that the ALJ erred by finding the mental health opinions of state agency medical consultants Winfred Ju, Ph.D., and Anna Franco, Psy.D., mostly persuasive.  Dkt. No. 14 at 12-13.  Specifically, the ALJ found the opinion of Dr. Franco to be mostly persuasive despite Dr. Franco only finding diagnoses of "borderline intellectual functioning" and "substance addiction disorders (drugs)," diagnoses not found in the rest of the record.  AT 79.  Dr. Ju, in

United States District Court
Northern District of California

United States District Court
Northern District of California

contrast, found diagnoses of "depressive, bipolar, and related disorders, as well as anxiety and obsessive-compulsive disorders. AT 64. Therefore, Dr. Franco's diagnoses are inconsistent with Dr. Ju's diagnoses. Dr. Franco's findings are also inconsistent with medical records showing diagnoses of post-traumatic stress disorder and recurrent major depressive disorder. AT 365, 453.

However, the ALJ does not rely on the conflicting portions of Dr. Franco's findings. Rather, the ALJ accepts those portions of Dr. Franco's and Dr. Ju's opinions consistent with the limitations identified by others in the record, including that both doctors "assessed 'moderate' limitations in all areas of the 'B criteria', with the exception of adaptation and managing oneself where they assessed a 'mild' limitation [citation], and limited the claimant to performing simple, repetitive tasks with only occasional (incidental) interactions with the public [citation]." AT 26. To the extent the ALJ deviated from Dr. Ju's and Dr. Franco's administrative medical findings, the ALJ deviated in E.T.'s favor, finding that his moderate difficulties in social interaction extend to interactions with supervisors and coworkers, and that the totality of the evidence supported a moderate limitation in E.T.'s ability to adapt and manage himself. Again, the ALJ's decision is supported by substantial evidence, and the Court does not disturb the ALJ's decision on this basis.

### 2. Rejection of E.T.'s Testimony

E.T. argues that the ALJ erred in failing to provide clear and convincing reasons for rejecting E.T.'s testimony. *See* Dkt. No. 14 at 13-17. In assessing whether to credit a claimant's subjective allegations regarding their functional limitations, the ALJ is to follow a two-step process. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Ferguson*, 95 F.4th at 1199. When a claimant satisfies the first step, and absent any evidence of malingering, "the ALJ can reject the claimant's testimony . . . only by offering specific, clear and convincing reasons for doing so." *Id.* at 1199; *see also Smartt v. Kijakazi*, 53 F.4th 489, 497 (9th Cir. 2022) ("[A]n adverse credibility finding must be based on clear and convincing reasons."). To meet this standard, the ALJ must not only identify medical evidence in the record that is inconsistent with a claimant's subjective allegations but must also explain the inconsistency. *See Ferguson*, 95 F.4th at 1200. The Ninth Circuit makes clear that,

10

United States District Court
Northern District of California

"[w]hen objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt*, 53 F.4th at 498. But in concluding that the individual's symptoms are inconsistent with the medical evidence, the ALJ must "show his work." *Smartt*, 53 F.4th at 499.

Requiring an ALJ to support their evaluation of the claimant's subjective testimony with specific findings enables the reviewing court to determine whether the ALJ "arbitrarily discredit[ed]" the testimony. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *accord Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) ("the ALJ must provide sufficient reasoning" to "permit meaningful review"); SSR 16-3p (stating ALJ's evaluation of symptom testimony must be explained clearly so "any subsequent reviewer can assess how the adjudicator evaluated" it). As the Ninth Circuit has explained, "[t]he standard isn't whether [this] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499. If the ALJ does not provide sufficient reasons for rejecting the claimant's testimony, "then the ALJ's credibility determination is not supported by substantial evidence." *Id.* at 1199. But where the ALJ's credibility determination is adequately supported, this Court "may not engage in second-guessing." *Thomas*, 278 F.3d at 959. "[T]he credibility determination is exclusively the ALJ's to make, and [the Court's] only to review." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).

Here, the ALJ found that, although the evidence documented conditions and symptoms that could result in significant functional limitations for E.T., the record revealed his statements to be inconsistent. AT 23. For example, the ALJ noted that E.T.'s stated belief that he could not work due to health issues was inconsistent with his report to Dr. Krikorian that he could not work due to limited transportation. AT 23, 379. And the ALJ noted that E.T.'s claim that he could not handle a savings account was inconsistent with the fact that he handled all the household finances for himself and his father figure, with whom he has lived several years. AT 21, 42-43, 229. Further, the ALJ cited Toye's ability to take care of himself, including self-care, dishes, laundry, cooking, cleaning, mopping, vacuuming, sweeping, taking out the trash, grocery shopping, making

11

correct change, and using public transportation and a ride-sharing service, as well as his ability to walk two hours every day.  AT 21, 373.

E.T. avers his statements that activities of daily life such as grocery shopping or paying bills can "take all day" and require "many rest breaks" should not be held against him as inconsistent with other statements because "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."  Dkt. No. 14 at 15 (quoting *Reddick*, 157 F.3d at 722).  But the ALJ's rejection of E.T.'s testimony focuses on the inconsistency of his statements rather than an attack on his effort to carry out activities of daily living.  Although he was undisputedly limited by his impairments, E.T.'s statements regarding his robust remaining activities are relevant because they conflict with his description of severe incapacity.  In *Ahearn*, the court affirmed the ALJ's findings that the claimant's complaints were inconsistent with activities like using a computer, playing video games, watching television, doing chores, and taking public transportation.  *Ahearn*, 988 F.3d at 1117.  So too in this case.  The ALJ reasonably found that E.T.'s disability complaints were at odds with his described activity level, and he provided a rationale "clear enough that it has the power to convince."  *Smartt*, 53 F.4th at 499.  The Court cannot second guess the ALJ's determination.  *Thomas*, 278 F.3d at 959.

### 3.     Meeting a Listing

Step three requires the ALJ to determine whether the impairment or combination of impairments "meets, medically equals or functionally equals" the severity of a set of criteria for an impairment in the Listing of Impairments ("listings").  20 C.F.R. § 416.924(d).  E.T. asserts in passing that he meets a listing.  Dkt. No. 14 at 18.  The Court need not consider claims not actually argued specifically and distinctly in a party's opening brief, so the Court need not reach this issue.  *See Indep. Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003).

Nonetheless, E.T.'s argument fails because the ALJ considered the potential applicability of the listings at step three, including the specific listings to which E.T. refers.  AT 20-22.  E.T. argues that the ALJ erred by failing to find that E.T.'s limitations satisfied the B Criteria of Listings 12.04 (Depression) and 12.15 (PTSD).  *See* Dkt. No. 17 at 8.  E.T. advances that, had the ALJ properly considered the "marked" limitations described in the opinions of Dr. Wiebe and Dr.

Catlin, the ALJ would have found Plaintiff disabled at step three of the sequential evaluation process. *Id.* The ALJ's decision reveals that he considered the medical opinions of Dr. Wiebe and Dr. Catlin, he just found them to be less persuasive than E.T. would prefer. AT 20-22. Indeed, the ALJ considered the opinions of both Dr. Wiebe and Dr. Catlin alongside other record evidence, including E.T.'s testimony and the opinion of Natasha Krikorian, Psy.D. AT 20-22. The ALJ's step three determination that E.T. did not meet listings 12.04 (Depression) and 12.15 (PTSD) is thus supported by substantial evidence, and the Court does not disturb the ALJ's opinion on this basis. *See Ahearn*, 988 F.3d at 1115.

### C.    Step Four – Residual Functional Capacity of E.T.

E.T. argues that the ALJ erred by making an RFC determination not based on substantial evidence. *See* Dkt. No. 14 at 17-20. A claimant's "residual functional capacity is the most [the claimant] can still do despite [their] limitations," and is assessed "based on all the relevant evidence in [the] record." 20 C.F.R. § 404.1545(a); id. § 416.945(a). The ALJ's task is to "translate" the claimant's limitations into "concrete restrictions." *Stubbs-Danielson v. Astrue*, 539 F. 3d 1169, 1174 (9th Cir. 2008). "Moderate limitations [in the Paragraph B categories] do not have to be exactly mirrored in the RFC determination." *Phillips v. Colvin*, 61 F. Supp. 3d 925, 939 (N.D. Cal. 2014). Instead, the Ninth Circuit holds that "an ALJ's assessment of a claimant adequately captures [those] restrictions . . . where the assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson*, 539 F.3d at 1174 (finding no error where ALJ limited claimant to "simple tasks" to accommodate limitations related to concentration, persistence or pace).

In his decision, the ALJ found E.T.

> has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to performing simple, routine tasks, with only occasional, interactions with the public on a superficial level (e.g., exchanging pleasantries or directing someone to the location of the nearest restroom). He can handle routine changes in an unskilled work setting and can occasionally interact with supervisors. The claimant can occasionally interact with coworkers but not in a tandem or team setting.

United States District Court
Northern District of California

United States District Court
Northern District of California

AT 22.  E.T. contends that the ALJ erred in (1) ignoring the claimant's statements about the intensity and persistence of his symptoms, (2) giving less persuasiveness to examining psychologists who found marked limitations to claimant's abilities, and (3) ignoring the testimony of the Vocational Expert in regards to maintaining acceptable attendance and staying on-task. Dkt. No. 14 at 18-19.  The first two of these contentions fail for the reasons discussed above related to the ALJ's discounting of E.T.'s inconsistent testimony, including his symptoms, and the ALJ's evaluation of medical opinions.  That leaves for consideration here only whether the ALJ erred in his consideration of the Vocational Expert's testimony.

When the ALJ discussed E.T.'s RFC in the decision, he found E.T. could perform the work of "Cleaner II," "Laboratory equipment cleaner," and "Hand Packager."  AT 29.  E.T. points to a portion of the Vocational Expert's testimony in which E.T.'s counsel posed hypotheticals to which the Vocational Expert responded, based on his "training and experience," there would be no jobs that the claimant could perform if he were off-task 10% or more of the day or if he were absent two or more days a month.  AT 55.  The ALJ did not appear to consider this portion of the Vocational Expert's testimony in the decision, as he states only,

> Pursuant to SSR 00-4p, I have determined that the VE's testimony is consistent with the information contained in the Dictionary of Occupational Titles, except that the DOT does not address the issues of interactions with supervisors, co-workers, or the public.  The VE stated that he based his testimony on his training and experience.  I accept this explanation and adopt the VE's testimony in total.

AT 29.  "If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy."  *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  Here, the ALJ's consideration of the evidence, including E.T.'s estimated time off-task and number of days absent from work, could result in modification to E.T.'s RFC.  *See Stephan v. Kijakazi*, No. 22-CV-06021-SK, 2023 WL 7284144, at *10 (N.D. Cal. Nov. 3, 2023) (finding ALJ's failure to properly consider plaintiff's testimony was not harmless error where, "were the ALJ to fully credit Plaintiff's mental health testimony and incorporate it into the RFC, a more restrictive RFC would be certain and would possibly change the ultimate disability determination"); *see also Martin v.*

14

*Colvin*, No. CV 12-5693 MRW, 2013 WL 2139550, at *3 (C.D. Cal. May 15, 2013). Accordingly, the Court cannot find the ALJ's error in failing to account for the hypothetical was harmless.

### D.     Remand for Further Proceedings

In reviewing a Social Security Commissioner's decision, a court may remand the case "either for additional evidence and findings or to award benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Typically, when a court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Moreover, "[r]emand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." *Taylor v. Comm'r of Soc. Sec.*, 659 F.3d 1228, 1235 (9th Cir. 2011) (reversing and remanding for the consideration of new evidence instead of awarding benefits); *see also Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) ("Because neither the ALJ nor the vocational expert had the full picture before them, remand for further proceedings is particularly appropriate.").

"The Court does not find that this is the exceptional case where remand for the immediate award of benefits is appropriate." *S.M. v. Comm'r of Soc. Sec.*, No. 24-CV-06297-NC, 2025 WL 1527761, at *8 (N.D. Cal. May 29, 2025). Rather, the Court concludes that further administrative proceedings would be useful in order to let the ALJ adequately address E.T.'s estimated time off-task and absences in assessing RFC. Therefore, the Court finds remand for further proceedings appropriate in this case.

//

//

//

United States District Court
Northern District of California

15

## IV.    CONCLUSION

For the foregoing reasons, the Court reverses the Commissioner's decision and denies the Commissioner's request to affirm the denial of benefits.  The matter is remanded for further proceedings consistent with this order.

**IT IS SO ORDERED.**

Dated: March 16, 2026

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

United States District Court
Northern District of California

16